UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
FRANK SACCO,

                      Petitioner,

           - against -

GARY GREENE, Superintendent, etc.,

                     Respondent
--------------------------------------------------------x

04 Civ. 2391 (CLB)

*Memorandum and Order*

Brieant, J.

      Mr. Frank Sacco, a state prisoner convicted of the murder of Robert Meloni, has been seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  See *Sacco v. Cooksey*, 214 F.3d 270 (2d Cir. 2000).  By a Summary Order issued February 24, 2006 in the above entitled proceeding, filed in this District Court as a Mandate on April 12, 2006, our Court of Appeals ordered that the Petition filed March 26, 2004, originally transferred to the Circuit Court by this Court as a second or successive § 2254 Petition, be re-transferred to the district court with instruction to "accept the Petition, to the extent that it raises a claim of actual innocence, for filing as a first petition under 28 U.S.C. § 2254(b)."  The Court of Appeals also held that the district court "should determine whether this Court's findings in its 2000 decision have a collateral estoppel effect on the actual innocence claim and, in addition, whether *Herrera v. Collins,* 506 U.S. 390, 400 (1993), implicates the claim."

      On May 18, 2006, this Court issued a briefing schedule with respect to compliance with the Mandate, and held a hearing on September 21, 2006 at which time decision was reserved.  At the hearing, Federal Defenders of New York, Inc. (Yuanchung Lee, Esq.) was appointed to

represent Mr. Sacco in connection with the proceedings on remand.

The prior history of this case may be found in *Sacco v. Cooksey, supra* and is set forth in some detail in Petitioner's brief in this proceeding, commencing on page 4.  Familiarity therewith on the part of the reader is assumed.  To the extent necessary for this particular decision, the Court will refer in detail in the discussion which follows to some of the prior state and federal

proceedings.

Petitioner, age 83, is serving a twenty-five years to life sentence for Second Degree Murder,  and bases this Petition on the ground that he is actually innocent of the crime. Frank Armento (Sacco's nephew and former business partner) is the sole witness whose testimony directly implicates Mr. Sacco as the murderer of Robert Meloni.  While Mr. Sacco may have had guilty knowledge of the murder and may well have been an accessory after the fact, his claim that Frank Armento committed the murder and the evidence submitted in support of it is, as this Court has previously held, sufficient to raise "vintage reasonable doubt."[1]

---

[1]Whether Sacco participated in the murder of Meloni as an accessory after the fact or as the principal is material, because in New York the primary violator and an accessory may be convicted of different degrees of crime, see N.Y. Penal Law § 20.15, and usually an accessory is subjected to significantly lesser penalties once convicted.  See N.Y. Penal Law, § 55.05(1) (classification of Felony).  In addition, accessories after the fact often cannot be convicted as a primary violator because their acts occur after the crime has been committed.  See *People v. Robinson,* 98 E.2d 249 (4th Dept.), affirmed 60 N.Y. 2d  982 (1982); *People v. LaBelle*, 18 N.Y. 2d 982 (1966).

This Petition proffers some new exculpatory evidence, and also exculpatory evidence which Sacco's trial attorney knew existed at the time of trial but did not use.  Our Court of Appeals has previously held in *Sacco v. Cooksey*, *supra* that the failure or refusal of trial counsel to use the known exculpatory evidence did not rise to a level of incompetence to satisfy the first branch of the *Strickland* Rule.  As to the new exculpatory evidence, of course it could not and did not enter into the *Strickland* analysis.

**Consideration of Herrera v. Collins, 506 U.S. 390, 400 (1993)**.

For convenience, we commence our analysis with the issue of whether *Herrera* "implicates," or perhaps bars, the present claim of actual innocence.

What is the significance of *dicta* where its author is a Justice of the Supreme Court?  Our Court of Appeals has approved the definition of *dicta* adopted in *Carroll v. Carroll's Lessee*, that "if a point of law might have been decided either way without affecting any right brought into question, then, according to the principles of the Common Law, an opinion on such a question is not a decision," 57 U.S. (16 How) 275, 286-87 (1853), (cited with approval in *Jimenez v. Walker*, 458 F.3d 130, 142, 143 (2d Cir. 2006)).  The opinion in *Herrera* is rife with *dicta*. However, there is no reason to believe that the statements of the various co-authors do not represent their true beliefs and understandings.  Thus, we may reasonably expect that, as future cases unfold, those same views are likely to be expressed again, this time as *ratio decidendi*.

The issue under consideration presumably is whether a so-called stand-alone claim of

actual innocence based on newly discovered evidence is cognizable in a habeas court.  In

*Herrera,* the Court considered a challenge to a state conviction and subsequent collateral

proceedings in which a Petitioner sentenced to death urged by affidavits for the first time, in a

second federal habeas petition, filed ten years after his conviction, that he was actually innocent

of the murder with which he was charged.  The affidavits presented showed the real killer was

his brother, now conveniently deceased.  Petitioner argued that the Eighth Amendment's

prohibition against cruel and unusual punishment and the Fourteenth Amendment's guaranty of

due process rendered his prospective execution unconstitutional.  In denying the writ, the Court

of Appeals had relied on *Townsend* v. *Sain,* which held that "the existence merely of newly

discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal

habeas corpus," 372 U.S. 293, 317 (1963).   This and the fact that it was a death case inspired the

grant of *certiorari.*


The rule of *Townsend v. Sain* is said in *Herrera* to be grounded on the principle that

federal habeas corpus courts sit to ensure that individuals are not in prison in violation of the

Constitution, not to correct errors of fact. The majority opinion in *Herrera* cites *Jackson v.*

*Virginia,* 443 U.S. 307 (1979) as holding that a federal habeas court may review a claim if the

evidence adduced in a state trial was not sufficient to convict a criminal defendant beyond a

reasonable doubt.  Nevertheless, after expressing understandable policy concerns, the majority,

speaking through the Chief Justice, held as follows:

> We may assume for the sake of argument in deciding this case, that in a capital case
> a truly persuasive demonstration of actual innocence made after trial would render
> the execution of a defendant unconstitutional and warrant federal habeas relief if
> there were no state avenue open to process such a claim.

*Herrera* at 417.

The opinion went on to observe that the "threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*  Relief was denied to *Herrera* because "the showing made  falls far short of any such threshold."

This exposes as *dicta* without the force of law are all that went before.  Justice O'Connor, joined by Justice Kennedy and adopting the double negative so popular with today's judiciary, observed that "I cannot disagree with the fundamental legal principle that executing the innocent is inconsistent with the Constitution.  The execution of a legally and factually innocent person would be a constitutionally intolerable event." *Id* at 419 (citations omitted).  Justice White, concurring in the judgment separately, assumed that a persuasive showing of actual innocence would render unconstitutional the execution of Petitioner, and that a petitioner seeking such relief would be required at least to satisfy the *Jackson* standard based on newly discovered evidence and the entire record of the trial.  *Id* at 429.

*Herrera* shows that at least five of the Justices apparently would in a proper case affirmatively hold that a free standing claim of innocence may be litigated in a habeas petition. It would seem as a matter of ordinary logic, that the law must be the same in a capital case as in a case involving significant imprisonment.  Justice Blackmun's dissent in *Herrera,* joined by Justices Stevens and Souter, expressed an opinion that it "may" also violate the Eighth Amendment to imprison someone who is actually innocent.  *Id* at 430.  Indeed, the large army of left wing lawyers and judges who have developed a cabal to prevent the execution of anybody in

the United States (by simply tying up the courts until the prisoner dies a natural death or they

find some argument that works) argue at the same time that imprisonment for long periods of

time is a more severe punishment than execution.[2]  There is no reason to think that the *Jackson v.*

*Virginia* standard of guilt should be or is any different between the case of an ordinary felon who

is innocent, and a capital case.  As Chief Justice Rehnquist stated himself in *Herrera*, "[i]t would

be a rather strange jurisprudence, in these circumstances, which held that under our Constitution

he could not be executed, but that he could spend the rest of his life in prison." *Herrera* at 405.


After *Herrera*, and after the decision of our Court of Appeals in this case, the Supreme

Court decided *House v. Bell*, 126 S.Ct. 2064 (June 12, 2006).  In *House,* the Court considered

another free-standing innocence claim in the context of a death penalty case. The majority in

*House*, held that, in certain exceptional cases involving a compelling claim of actual innocence,

the state procedural default rule is not a bar to a federal habeas petition.  *Id.* (citing *Schlup v.*

*Delo*, 513 U.S. 298 (1995)).  The majority opinion held that petitioner could proceed, reversing

the denial of the writ, based on convoluted facts which seem far less compelling than those

presented by Sacco.  The majority opinion in *House* also held that "whatever burden a

hypothetical free-standing innocence claim would require, this Petitioner has not satisfied it."

*House* at 2087.  The majority, however, also held the factual situation in *House* "satisfied the

_____

[2] This view has been expressed through the years by respectable philosophers, including
John Stuart Mill, in an address to Parliament on April 21, 1868 ("what comparison can there
really be in point of severity between consigning a man to the short pang of a rapid death and
immuring him in a living tomb, there to linger out what may be a long life in the hardest and
most monotonous toil...".  See also Jacques Barzun in The Death Penalty in America: an
Anthology (Bedair, ed. 1964) ("Imprisonment is worse than death.")  In the case of petitioner
Sacco, his term of imprisonment is much longer than his foreseeable life expectancy.

gateway standard set forth in *Schlup* and may proceed on remand with procedurally defaulted Constitutional claims." *Id* at 2087. The Chief Justice in dissent held that "considering all the evidence and giving due regard to the district court's findings on whether *House's* new evidence was reliable, I do not find it probable that no reasonable juror would vote to convict him." *Id*. He went on to say "I do not believe that House has met the higher threshold for a free-standing innocence claim, assuming such a claim exists." *Id*. The net effect of the decision in *House* confirms that Sacco's claim is neither implicated by nor is barred by *House*.

**Collateral Estoppel by *Sacco v. Cooksey*.**

A second issue presented by the Mandate for resolution by this Court is whether the ruling in *Cooksey*, to the effect that the state courts reasonably concluded that trial counsel's performance was reasonably competent, within the first prong of *Strickland*, collaterally estops the actual innocence claim being made in this Petition. This Court concludes that it does not. The only issue addressed in *Sacco v. Cooksey* was the reasonableness not of trial counsel's performance, within the first prong of *Strickland*, in deciding to withhold from the trial jury certain parts, but not all, of the evidence presently relied on. The issue presently before the Court is whether the Petitioner has proffered sufficient evidence of his innocence to meet the higher burden required to assert a free-standing innocence claim. This requires him to show by clear and convincing evidence that no hypothetical, reasonable juror faced with all the evidence could find him guilty of Meloni's murder beyond a reasonable doubt.

Collateral estoppel merely prevents a party from re-litigating in a subsequent proceeding

an *issue of fact or law* that was fully and fairly litigated in a prior proceeding. *See Purdy v. Zeldes,* 337 F.3d 253, 258 (2d Cir. 2003). For collateral estoppel, also known as issue preclusion, to apply it must appear that in the prior litigation the identical issue was raised, the issue was actually litigated and decided, the party against whom preclusion is sought had a full and fair opportunity to litigate the issue, and that the resolution of the issue was necessary to support a valid and final judgment on the merits in the prior proceeding. *Interoceanica v. Sound Pilots*, *Inc*., 107 F.3d 86, 91 (2d Cir. 1997).

The only issue raised in *Sacco v. Cooksey* was whether the state court's earlier adjudication that trial counsel's neglect or refusal to introduce evidence concerning certain additional proposed witnesses and Armento's April 7th telephone calls constituted reasonable trial strategy. The Court concluded that the determination that it was, was not an unreasonable application of the first prong of *Strickland.* The standard for the Court of Appeals decision on this point was regulated by 28 U.S.C. § 2254(d)(1). This means that the finding in the Court of Appeals is limited to the legal conclusion that the state court's determination that counsel's actions were reasonable and omissions were not unreasonable. Our Court of Appeals was not then dealing with the ultimate question of guilt or innocence, and therefore the 2000 decision determined, at most, that trial counsel's performance did not amount to misconduct "so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687; see *Sacco v. Cooksey,* 214 F.3d at 274-75.

The issue today is only the free-standing actual innocence claim. Because the issue

-8-

determined in the prior case is a different issue, collateral estoppel or issue preclusion cannot apply.  Furthermore, the issue was not actually litigated in the prior federal proceeding but instead was decided under the extremely deferential provisions of § 2254(d).  Mr. Sacco did not have a full and fair opportunity to litigate the issue of guilt or innocence either in this Court or in the Court of Appeals.  Furthermore, all of the evidence presently presented was not available to the state court at the time it reached its decision concerning the first prong of *Strickland* and not available to this Court or the Court of Appeals in the 2000 case.  Accordingly, this Court concludes that there is no collateral estoppel or issue preclusion of this present litigation.

**Claim Preclusion by *Sacco v. Cooksey***

Respondent argues for the first time in a Supplemental Memorandum of Law and Appendix filed July 27, 2006, that "[b]ased on the Second Circuit's findings (sic) this Court may not find that petitioner's three new witnesses are reliable or credible."  The reference is to *Sacco v. Cooksey,* 214 F. 3d 270 (2005) at p. 274.

The argument borders on the frivolous.  First, the Court of Appeals made no "findings" of fact, nor does it do so.  It states conclusions of law.  The conclusion of law at issue on the appeal was whether trial counsel's "decisions not to call the additional witnesses or use the telephone conversation" constituted ineffectiveness for purposes of *Strickland.*  At most, the panel opinion found the uncalled witnesses "highly impeachable" because they had "strong motives to lie for Sacco" and had "either drug habits or criminal histories" (*Id* at 274-75).  This is neither a finding

-9-

or a legal conclusion that they had been impeached, or that their proposed testimony, untested by cross-examination, was incredible as a matter of law.  Indeed the view expressed was only relevant to the *Strickland* analysis.  The argument that the opinion in *Sacco v. Cooksey* answers the question of credibility or weight defies common sense, because if this were so, what would be the purpose of the remand?  Neither this argument nor anything found in *Sacco v. Cooksey* prevents Petitioner from prevailing on his claim of actual innocence.

**The decision of the Hon. Nicholas DeRosa rejecting Petitioner's *Pro se* Motion under New York CPL 440.10 filed October 31, 2002.**

The County Judge denied Petitioner's *pro se* motion based on the claim of innocence and held that "after reading the evidence submitted by [Petitioner] the Court is satisfied that an innocent person has not been convicted and incarcerated."  This brief adjudication made without a hearing is relied on by Respondents to invoke the deferential standard of review set forth in AEDPA and is presented as an "adjudication on the merits."  It was not.  Based on the papers, the Court stated "as proof of his actual innocence, Defendant submits a statement of his wife, Lillian Sacco, dated July 6, 2001.  This statement purports to establish the time phone conversations were had with Frank Armento on April 7, 1988."  Actually, the statement was submitted, not to establish the *time*, which appears on the face of the phone bills themselves, but only that

Frank Armento himself made the phone calls, from Yonkers, New York.  The phone bills for the phone calls themselves were available to show the time.  As commented upon by our Court of Appeals in *Sacco v. Cooksey,* trial counsel also had but did not use a tape recording made by federal prison officials, which he did not use, in which Armento admitted to Sacco that he was

-10-

the caller.  The panel in *Sacco v. Cooksey* excused counsel's tactical decision not to use the tape, within the first prong of *Strickland,* 214 F.3d at 275, because the entire tape could "reasonably be construed as [damaging] to defendant."  Judge DeRosa made no reference to the affidavits of Debra Davis, Steven Armento and David Armento attesting that Frank Armento on different occasions had admitted that he murdered Meloni.  He conducted no evidentiary hearing and denied the motion after making what must be considered to be factual findings of non-credibility achieved merely by reading the papers.  The decision contains a *non sequitur* as follows: "[A] hearing is neither required nor is it necessary.  There is no reason to believe [Lillian] Sacco would testify any differently from her statement. . . the Court is satisfied that an innocent person has not been convicted and incarcerated."  The availability of Lillian Sacco's testimony corroborates the tape recording, which is said to contain evidence it was staged.

Affiants who state facts under oath are presumed to be truthful.  Many issues in litigation are decided by affidavits, in light of the presumptions of regularity and truthfulness of witnesses so enshrined in the common law that until quite recently they were part of the jury charge in every federal criminal case.  *See United States v. Bilotti*, 380 F.2d 649, 654 (2d. Cir. 1967) (noting disapproval of the jury instruction: "In our law there is presumption that unless and until determined by you to be outweighed by evidence to the contrary, a witness speaks the truth," and also noting that such appeared in *Mathes, Jury Instructions and Forms*, a respected treatise published in 1961, and revised in 1965 in *Mathes and Devitt, Federal Jury Practice and Instructions*, to read:

> Ordinarily it is *assumed* that a witness will speak the truth.  But this assumption may be dispelled by the appearance and conduct of the witness, etc., etc.)

-11-

The subtle distinction between assumptions and presumptions may not be apparent.  In any event, a person denying the truthfulness of an affidavit setting forth facts, bears at least a burden of production.  This means that it was necessary in this context to be entitled to issue preclusion, a court must at least hold an evidentiary hearing, observe the demeanor of the affiants and subject them to cross-examination which has been considered "the greatest legal engine

ever invented for the discovery of truth" *5 Wigmore s 1367*.

It seems to have been considered in the prior history of the case that these affiants were untruthful as a matter of law for various presumed reasons including that the affiant was a druggie or was related to Sacco in some way or had a criminal record or had allegedly been or bribed or induced by Sacco to execute the affidavits.  Naturally, and logically, it does not automatically follow that a druggie or a felon or a person having an interest in the outcome of the litigation is incapable of telling the truth or that *all* of his or her statements are mendacious.  While some affidavits in the context of a *habeas* case may be rejected on their face as implausible or contrived, these particular submissions would support a conclusion of reasonable doubt.  Yet, because there was no credibility finding and no evidentiary hearing, the rejection out of hand of these items of evidence is based on an unreasonable determination of the facts in light of the evidence presented and therefore Judge DeRosa's decision is not binding under AEDPA by reason of Subsection (d)(2) of Section 2254.  Also, this Court agrees with the argument of Petitioner that the County Court's decision appears to be addressed solely to evidence of innocence based on the telephone calls, where for the first time on the record in the lengthy

history of the case, Sacco connects the actual call to a use of the telephone by Armento, as opposed to possibly some member of his family or a third person.

The claim presently before this Court is based on everything which the jury did not have and not merely the identification of Armento himself as the caller who used the phone in Yonkers at the same time he testified he watched the killing of Meloni in Orange County, more than an hour away.  If the presentation by Sacco in his *pro se* application to the County Court in October, 2002 was so faulty as to fail to call to the attention of the Court that these items of new evidence, together with the prior information which the jury did not receive due to counsel's discretionary refusal to present them, should be treated together in support of his claim of innocence, there can be no procedural default.  To impose a procedural default under such circumstances would result in a "miscarriage of justice" within the standard of *Schlup v. Delo*, *supra*.

This Court concludes that these proceedings are not barred under AEDPA on any of the several theories discussed above nor is there issue preclusion resulting from Judge DeRosa's decision.

**This Court should adjudicate Petitioner's claim of actual innocence**.

This Court agrees that there is a claim available under the Eighth and Fourteenth Amendments to the Constitution if Petitioner can prove by clear and convincing evidence that he is innocent of the murder of Robert Meloni, and this claim is not precluded by *Herrera v.*

-13-

*Collins,* 506 U.S. 390.  It is available to a *habeas* petitioner who, upon satisfying the so-called "gateway" standard of *Schlup v. Delo*, *supra,* can demonstrate that no reasonable juror would find him guilty beyond a reasonable doubt in light of all the available evidence.  This standard is essentially equivalent to the *Jackson* standard.

**This Court must conduct an evidentiary hearing**.

As this Court has noted numerous times, the case against Mr. Sacco depends almost entirely on the testimony of Frank Armento.  Armento's oral testimony is the only evidentiary basis in the trial for finding that Sacco, and not Armento, shot Meloni.  No evidence at the trial is inconsistent with the fact that Armento committed the actual murder and did so at a time different than that testified to a trial, and possibly also at a different location.

An evidentiary hearing is required because "the Court must make its own credibility determination based on its assessment of the totality of evidence in the record, both 'old' and 'new'."  *Doe v. Menefee,* 391 F.3d 147, 172 (2d Cir. 2004).

<u>**Conclusion**</u>

An evidentiary hearing is hereby set for April 4, 2007 at 9:00 A.M.  Within ten (10) days, counsel for both sides of the case shall serve and file a proposed witness list, and a request for trial subpoenas and/or writs *ad testificandum* for specified witnesses where their location is known.  Where the substance of the testimony is not apparent as to a witness, an offer of proof will be welcome.  A writ for the production of Petitioner should also be presented for issuance

by the Court.

X

X

X

X

X

SO ORDERED.

Dated: White Plains, New York
       January 30, 2007

_____
Charles L. Brieant, U.S.D.J.